**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

GRAY TELEVISION GROUP, INC.

                Plaintiff,

    -against-

FOUND FOOTAGE FESTIVAL, LLC,
NICK PRUEHER, AND
JOE PICKETT,

            Defendants.

Case No. 1:17-cv-2232-MKB-SMG

**PLAINTIFF GRAY TELEVISON GROUP, INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Dated:  October 17, 2017

Respectfully submitted,

BALLARD SPAHR LLP
Charles D. Tobin
Adrianna C. Rodriguez (*admitted pro hac vice*)
1909 K St., N.W., 12th Floor
Washington, D.C. 20006
Telephone: (202) 661-2200
Facsimile: (202) 661-2299
TobinC@ballardspahr.com
RodriguezAC@ballardspahr.com
*Attorneys for Plaintiff
Gray Television Group, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    PRELIMINARY STATEMENT ..................................................................... 1

II.    STATEMENT OF FACTS ........................................................................... 2

III.    GENUINE ISSUES OF MATERIAL FACT PREVENT DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT FROM BEING
GRANTED ................................................................................................... 3

    A.    Standard Of Review .......................................................................... 3

    B.    Defendants' Motion For Summary Judgment On Gray Television's Fraud
And Conspiracy Claims Should Be Denied ........................................... 4

        1.    Defendants Made False And Material Representations To Gray
Television ................................................................................... 5

        2.    Defendants Intentionally Defrauded Gray Television ................................ 6

        3.    Gray Television Justifiably Relied On Defendants'
Misrepresentations .................................................................... 8

        4.    Gray Television Suffered Damages That Can Be Proved At Trial
As A Result of Defendants' Fraudulent Conduct ..................................... 11

    C.    Defendants' Motion For Summary Judgment On Gray Television's
Copyright Claim Should Be Denied ..................................................... 13

        1.    Material Questions Of Fact Concerning The Purpose And
Character Of Found Footage Festivals Use Of Gray Television's
Footage Preclude A Finding Of "Fair Use" ............................................. 14

            a.    Found Footage Festival's Use Was Not Transformative .............. 14

            b.    Found Footage Festival's Use Was Commercial ......................... 18

            c.    Found Footage Festival Acted In Bad Faith ................................. 19

        2.    The Nature Of The Copyrighted Work Precludes A Finding Of
"Fair Use" ................................................................................. 20

        3.    Material Questions Of Fact Concerning The Amount And
Substantiality Of Gray Television's Footage Used Preclude A
Finding Of "Fair Use" .................................................................. 21

        4.    Material Questions Of Fact Concerning The Effect Of The Use
Upon The Potential Market Preclude A Finding Of "Fair Use" .............. 22

IV.    ALTERNATIVELY, PURSUANT TO FED. R. CIV. P. 56(d), THE COURT SHOULD CONTINUE DEFENDANTS' SUMMARY JUDGMENT MOTION IN ORDER TO ALLOW ADEQUATE TIME FOR DISCOVERY ............................... 24

V.    CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*16 Casa Duce, LLC v. Merkin,*
791 F.3d 247 (2d Cir. 2015)................................................................16

*777388 Ontario Ltd. v. Lencore Acoustics Corp.,*
142 F.Supp.2d 309 (E.D.N.Y.2001) .....................................................5

*Aguirre v. Best Care Agency, Inc.,*
961 F. Supp. 2d 427 (E.D.N.Y. 2013) ................................................5, 6

*Amaker v. Foley,*
274 F.3d 677 (2d Cir. 2001)..................................................................4

*American Geophysical Union v. Texaco Inc.,*
60 F.3d 913 (2d Cir. 1994)..................................................................18

*American Institute of Physics v. Winstead PC,*
2013 WL 6242843 (N.D. Tex. Dec. 3, 2013) .......................................19

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)..............................................................................3

*AWH Investment Partnership v. Citigroup, Inc.,*
661 Fed. Appx. 2 (2d Cir. 2016) .........................................................12

*Blanch v. Koons,*
467 F.3d 244 (2d Cir. 2006)..............................................13, 14, 16, 17, 22

*Bouchat v. Baltimore Ravens Ltd. Partnership,*
619 F.3d 301 (4th Cir. 2010) ..............................................................15

*Burnett v. Ford Motor Credit Co., LLC,*
2012 WL 897789 (S.D.N.Y. Mar. 16, 2012), *report and recommendation adopted sub
nom. Burnett v. Federico*, 2012 WL 1450549 (S.D.N.Y. Apr. 23, 2012) ...............................12

*Campbell v. Acuff-Rose Music, Inc.,*
510 U.S. 569 (1994)..........................................................13, 14, 18, 21

*Cariou v. Prince,*
714 F.3d 694 (2d Cir. 2013)................................................................20

*Carpenter v. Churchville Greene Homeowner's Association, Inc.,*
2011 WL 710204 (W.D.N.Y. Feb. 22, 2011) .......................................24

*Computech, Int'l, Inc. v. Compaq Computer Corp.*,
   2004 WL 1126320 (S.D.N.Y. May 21, 2004) ..........................................................5

*Consumers Union of U.S., Inc. v. Gen. Signal Corp.*,
   724 F.2d 1044 (2d Cir. 1983) ...............................................................................18

*Davis v. Walt Disney Co.*,
   2004 WL 1895234 (D. Minn. Aug. 23, 2004) .......................................................18

*Doehla v. Wathne Ltd., Inc.*,
   2000 WL 987280 (S.D.N.Y. July 17, 2000) ....................................................11, 13

*Elvis Presley Enterprises, Inc v. Passport Video*,
   349 F.3d 622 (9th Cir. 2003) ................................................................................16

*Field v. Mans*,
   516 U.S. 59 (1995)................................................................................................10

*Giannullo v. City of New York*,
   322 F.3d 139 (2d Cir. 2003)....................................................................................4

*Goldberg v. Mallinckrodt, Inc.*,
   792 F.2d 305 (2d Cir. 1986)..................................................................................12

*Grumman Allied Indus. v. Rohr Indus.*,
   748 F.2d 729 (2d Cir. 1984)....................................................................................9

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
   471 U.S. 539, 562 (1985)........................................................................19, 21, 23

*Healing Power, Inc. v. Ace Continental Exports, Ltd.*,
   2008 WL 4693246 (E.D.N.Y. Oct. 17, 2008) .......................................................11

*Hirsch v. CBS Broad., Inc.*,
   2017 WL 3393845 (S.D.N.Y. Aug. 4, 2017)....................................................18, 20

*Infinity Broad. Corp. v. Kirkwood*,
   150 F. 3d 104 (2d Cir. 1998)..................................................................................13

*Iowa State Univ. Research Found., Inc. v. Am. Broad. Cos.*,
   621 F.2d 57 (2d Cir. 1980)....................................................................................21

*Kane v. Comedy Partners*,
   No. 00 CIV. 158(GBD), 2003 WL 22383387 (S.D.N.Y. Oct. 16, 2003), *aff'd*, 98 F.
   App'x 73 (2d Cir. 2004) ...............................................................15, 17, 20, 22

*L.A. News Serv. v. CBS Broad., Inc.*,
   305 F.3d 924 (9th Cir. 2002) ................................................................................16

*LaChapelle v. Fenty*,
    812 F. Supp. 2d 434 (S.D.N.Y. 2011)........................................................................17

*Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
    784 F.3d 78 (2d Cir. 2015)........................................................................3

*M & T Mortg. Corp. v. White*,
    736 F. Supp. 2d 538 (E.D.N.Y. 2010) ........................................................................5

*Meisel v. Grunberg*,
    2010 WL 4966443 (S.D.N.Y. Nov. 30, 2010)........................................................................9

*Miller v. Wolpoff & Abramson, L.L.P.*,
    321 F.3d 292 (2d Cir. 2003)........................................................................24

*Monge v. Maya Magazines, Inc.*,
    688 F.3d 1164 (9th Cir. 2012) ........................................................................15

*NXIVM Corp. v. Ross Inst.*,
    364 F.3d 471 (2d Cir. 2004)........................................................................19

*On Davis v. The Gap*,
    246 F.3d 152 (2d Cir. 2001)........................................................................22

*Peteski Prods., Inc. v. Rothman*,
    2017 WL 3731000 (E.D. Tex. Aug. 20, 2017) ........................................................................19

*Redd v. N.Y. Div. of Parole*,
    678 F.3d 166 (2d Cir. 2012)........................................................................3, 4

*Ringgold v. Black Entm't Television, Inc.*,
    126 F.3d 70 (2d Cir. 1997)........................................................................23

*Robinson v. Random House, Inc.*,
    877 F. Supp. 830 (S.D.N.Y. 1995), *modified on other grounds*, 1995 WL 502525
    (S.D.N.Y. Mar. 26, 1995) ........................................................................19

*Rogers v. Koons*,
    960 F.2d 301 (2d Cir. 1992)........................................................................19

*Sarl Louis Feraud Int'l v. Viewfinder Inc.*,
    627 F. Supp. 2d 123 (S.D.N.Y. 2008)........................................................................20

*Schlaifer Nance & Co. v. Estate of Warhol*,
    119 F.3d 91 (2d Cir. 1997)........................................................................9

*Shady Records, Inc. v. Source Enterprises, Inc.*,
    2005 WL 14920 (S.D.N.Y. Jan. 3, 2005) ........................................................................19

*Smith v. County of Suffolk,*
    776 F.3d 114 (2d Cir.2015)....................................................................................3

*Stewart v. Jackson & Nash,*
    976 F.2d 86 (2d Cir. 1992).............................................................................11, 12

*Swatch Grp. Management Services, Ltd. v. Bloomberg L.P.,*
    756 F.3d 73 (2d Cir. 2014)..................................................................................22

*TCA Television Corp. v. McCollum,*
    839 F.3d 168 (2d Cir. 2016).............................................13, 14, 15, 18, 21, 22

*Twenty First Century L.P. v. LaBianca,*
    19 F. Supp. 2d 35 (E.D.N.Y. 1998) ...............................................................10, 9

*U.S. v. American Soc. of Composers, Authors and Publishers,*
    599 F. Supp. 2d 415 (S.D.N.Y. 2009).....................................................13, 21, 23

*Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur,*
    892 F.2d 199 (2d Cir. 1989).................................................................................6

*Universe Antiques, Inc. v. Vareika,*
    510 Fed. Appx. 74 (2d Cir. 2013) ........................................................................9

*Video-Cinema Films, Inc. v. Lloyd E. Rigler-Lawrence E. Deutsch Found.,*
    2005 WL 2875327 (S.D.N.Y. Nov. 2, 2005).......................................................23

*Walden v. Sanitation Salvage Corp.,*
    2015 WL 143353 (S.D.N.Y. Mar. 30, 2015) ......................................................24

*Weissmann v. Freeman,*
    868 F.2d 1313 (2d Cir. 1989)..............................................................................14

*XPays, Inc. v. Internet Commerce Drp.,*
    2008 WL 11336139 (C.D. Cal. Jan. 10, 2008) ..............................................17, 21

**RULES**

Local Civil Rule 56.1 ..................................................................................................2

Fed. R. Civ. P. 56..................................................................................2, 3, 4 7, 23, 24

**STATUTE**

17 U.S.C. § 701 .........................................................................................................13

## I.      PRELIMINARY STATEMENT

Defendants Found Footage Festival, LLC, Nick Prueher and Joe Pickett are not "artists and curators."  They are opportunistic conmen who have built a business on lying their way onto live television broadcasts to create fake news.

Since 2010, Defendants have systematically lied to no less than 19 broadcast television stations posing as fake local personalities and creating segment after segment of false broadcasts. They  have used their appearances on live television to joke offensively about gambling addiction, suicide, alcohol abuse, prostitution, divorces, struggles with depression, loneliness and poverty.  Without authorization, they have exploited footage from those fraudulent appearances to promote themselves and their website, on DVDs sold on their website and in their live shows.

By the time they targeted local stations as "Chop & Steele," the personas they shamelessly ask this Court to vindicate, they had their scheme down to a science.  They knew that local morning shows broadcast daily segments featuring members of the community promoting local events.  They knew that the people featured on these segments do not have national profiles or prominent online presences.  They knew the local television stations they targeted would be particularly interested in their fraudulent offerings by a native of the area purportedly returning home to host free programs about wellness and anti-bullying.  They exploited this knowledge, meticulously creating materials that, in their words, "tick[ed] all the boxes."  Eight television stations, including WEAU, unwittingly responded enthusiastically, and six invited them to appear.

As with their previous promotional stunts, their actual on-air appearances were nothing like what they promised.  During their appearance on WEAU's *Hello Wisconsin*, they did not discuss "ways to unify people," "inner strength," "how to prevent bullying" or "generally be a 'good dude,'" as they had advertised.  Instead, "Chop" unexpectedly discussed his violent

1

outbursts while abusing steroids and his wealthy upbringing, and "Steele" discussed his "body image issues" and his impoverished upbringing.  They surreptitiously recorded their appearance and have exploited that footage on DVDs and videos and in their live shows without Gray Television's permission, blithely disregarding Gray Television's demand that they stop.

Ignoring these and many other facts in the record, Defendants filed this Motion for Partial Summary Judgment, seeking the dismissal of Gray Television's claims for fraud, conspiracy to commit tortious activity and copyright infringement, all in a transparent attempt to short-cut ongoing discovery.  Their attempt to avoid liability for their bad-faith stunts fail.  The record developed thus far makes clear the existence of numerous issues of material fact that would preclude the Court from granting Defendants' motion.  The disputed material issues of fact will only increase after Defendants depositions, which are currently scheduled to take place on October 23 and 24, the deposition of their business manager, which is scheduled to take place on October 25, and the identification of, and further discovery from, witnesses that are the subject of a letter motion to compel filed by Gray Television on October 6, which is scheduled for a hearing before Magistrate Judge Steven Gold on October 23.

Accordingly, Gray Television respectfully requests that Defendants' motion be denied, or, in the alternative, continued, pursuant to Fed. R. Civ. P. 56(d), until Defendants supplement their discovery responses and discovery has completed.

## II.   STATEMENT OF FACTS

Gray Television respectfully refers the Court to its Counterstatement of Material Facts in Dispute, prepared pursuant to Local Civil Rule 56.1, and the declarations and exhibits attached

thereto, for a full recitation of the facts relevant to the determination of Defendants' Motion for Partial Summary Judgment.[1]

## III. GENUINE ISSUES OF MATERIAL FACT PREVENT DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT FROM BEING GRANTED

### A. Standard Of Review

The granting of summary judgment is proper only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material where it "might affect the outcome of the suit under the governing law." *Id.* "Summary judgment is inappropriate when the admissible materials in the record makes it arguable that [a] claim has merit." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 173–74 (2d Cir. 2012) (reversing grant of summary judgment and remanding case requiring interpretation of ambiguous conduct and evaluation of individuals' motivations and state of mind).

In evaluating a motion for summary judgment, the Court is to "construe the evidence in the light most favorable to the nonmoving party," *Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Smith v. County of Suffolk*, 776 F.3d 114, 121 (2d Cir.2015) (reversing and remanding case where granting of summary judgment was "unjustified" and record evidence raised several genuine questions of material fact).  On summary judgment, the Court's role is "to *identify* factual issues, *not to resolve them*." *Redd*, 678 F.3d at 174 (emphasis in original).  Accordingly,

---

[1] Gray Television's Counterstatement of Material Facts in Dispute is cited herein as "CSMF ¶ ___."

the Court should not weigh evidence to determine the truth of the matter asserted, assess the credibility of witnesses, or evaluate ambiguous acts. *Id.*

The Second Circuit has further made clear that summary judgment is to be denied where the moving party fails to meet its burden of "production under Fed.R.Civ.P. 56(c) to show initially the absence of a genuine issue concerning any material fact." *Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir.2001) (reversing grant of summary judgment where moving party failed to meet burden of production) (internal quotations omitted). Fed. R. Civ. P. 56(c) requires Defendants to support each fact upon which their motion rests with "cit[ations] to particular parts of materials in the record, including…documents…affidavits or declaration…admissions, interrogatory answers, or other materials" that would be admissible at trial. If Defendants fail to meet this burden, they are not entitled to summary judgment. *Amaker*, 274 F.3d at 681; *Giannullo v. City of New York*, 322 F.3d 139, 142-43 (2d Cir. 2003) (vacating summary judgment where evidence in record did not support moving party's statements).

Defendants' motion fails entirely to carry their burden of production. Defendants arguments rely on conclusory and self-serving assertions untethered to record evidence about the purported purpose and intent of their fraudulent and infringing conduct, *see, e.g.*, Defs.' Mem., at 5, 10, 11, what they believe would be "reasonable" for local broadcast television stations, *see, e.g.*, Defs.' Mem., at 5, 12, or even what information they purport was available on Google at the time of their fraud, *see, e.g.*, Defs.' Mem., at 8. None of those facts are properly supported by any of the means required by Fed. R. Civ. P. 56(c), and the Court should disregard them.

**B.    Defendants' Motion For Summary Judgment On Gray Television's Fraud And Conspiracy Claims Should Be Denied**

To prevail on a fraud claim, Gray Television must establish at trial that (i) Defendants made a false and material representation; (ii) with the intent to defraud Gray Television; (iii)

Gray Television justifiably relied on those misrepresentations; and (iv) Gray Television suffered damages. *Computech, Int'l, Inc. v. Compaq Computer Corp.*, No. 02 CIV.2628(RWS), 2004 WL 1126320, at *7 (S.D.N.Y. May 21, 2004). Defendants offer no properly supported undisputed facts upon which the Court could grant their motion against Gray Television's fraud or conspiracy claims.[2]

Further, Defendants' arguments only serve to highlight the information still missing in the record as a direct result of their maneuvering to avoid their depositions and other discovery obligations in this case, and the material issues of disputed fact that cannot be resolved at this stage in litigation.

### 1.   Defendants Made False And Material Representations To Gray Television

A misrepresentation is material if it is "sufficiently important or relevant to influence the plaintiff's decision." *Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 448 (E.D.N.Y. 2013).

Defendants' assertion that they did not make a false and material misrepresentation because "they performed exactly as advertised," *see* Defs. Mem. at 8, misses the point. All of the information Defendants' made-up and provided to WEAU to induce them to book "Chop & Steele" to appear on *Hello Wisconsin* was false. CSMF ¶¶ 72-79. There was no "Jerry Chubb." CSMF ¶¶ 61-62. He was not the "representative" of "Chop & Steele." *Id.* "Joe Shopsin" and "Nicholas Stelling" did not exist. CSMF ¶ 80. "Steele" was not from Wisconsin. *Id.* Neither

---

[2] Conspiracy requires (1) "a corrupt agreement between two or more persons; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in furtherance of the plan or purpose; and (4) the resulting damage or injury." *777388 Ontario Ltd. v. Lencore Acoustics Corp.*, 142 F.Supp.2d 309, 319 (E.D.N.Y.2001). The material issues of fact that preclude the granting of Defendants' motion for summary judgment on Gray Television's fraud claim also preclude judgment on Gray Television's conspiracy claim. *See M & T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 569-70 (E.D.N.Y. 2010) (denying summary judgment on fraud and conspiracy claims).

Pickett nor Prueher were strongmen.  They were not on a "Give Thanks 4 Strengths" tour.  CSMF ¶ 84-84.  They were not promoting upcoming performances in Black River Falls, LaCrosse, Eau Claire, and Winona the week of November 28, 2016.  *Id.*  They did not have a radio appearance planned prior to their scheduled appearance on *Hello Wisconsin*.  CSMF ¶ 79.

This false information was designed to be consistent with, and was consistent with, the information provided to WEAU by persons seeking to be featured in a live local feature on *Hello Wisconsin*.  CSMF ¶ 64.  The purpose of "Chop & Steele's" appearance—free events concerning wellness and "anti-bullying"—was also consistent with the type of events typically covered on the local live features. CSMF ¶ 7-12.  The record, thus, clearly establishes that Defendants made false and material misrepresentations to induce WEAU to book them on *Hello Wisconsin*.

### 2.     Defendants Intentionally Defrauded Gray Television

"Questions of intent…are usually inappropriate for disposition on summary judgment." *Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur*, 892 F.2d 199, 205 (2d Cir. 1989).  Summary judgment is inappropriate where, as here, the facts support a fact-finder's conclusion that the defendant had "both the motive and a clear opportunity to commit fraud;" or that the defendant acted with "conscious behavior or recklessness" in making false claims.  *Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 451 (E.D.N.Y. 2013).

Defendants' reliance on cases decided on motions to dismiss, and under other state's laws, is unavailing.  *See* Defs. Mem. at 9-10.  Moreover, their claim that they did not intentionally defraud Gray Television because "Chop & Steele" behaved during the live *Hello Wisconsin* broadcast exactly as promised in the press release, *see* Defs. Mem. at 10, not only misses the mark again, but is flatly contradicted by the record, which establishes that Defendants had motive and a clear opportunity to commit the fraud.  Defendants targeted local television stations like WEAU with a compelling false narrative that fit well within the topics covered on

6

local live features.  CSMF ¶¶ 7-12, 23, 64.  The purpose was to advertise themselves, their website and upcoming shows, and use the footage in DVDs sold on their website and shown in their live shows.  CSMF ¶¶ 56, 71, 93-97.

Even if behaving exactly as promised in the press release was relevant, "Chop & Steele's" on-air appearance was nothing like what "Jerry Chubb's" e-mail and press release promised.  Jerry Chubb's" email and the press release to WEAU's Mr. Mickelson and Ms. Everett promised "an entertaining" wellness segment where "Chop & Steele" would discuss "ways to unify people," inner strength," "how to prevent bullying" through "humor, courage and self-respect," and how to "generally be a 'good dude.'"  CSMF ¶ 72.  What "Chop & Steele" actually did on *Hello Wisconsin* was tout their "mental strength," perform sophomoric shtick, and joke about abusing steroids, body image issues and poverty.  CSMF ¶ 84. To close out their live interview, "Chop & Steele" promoted their fake live show that evening at the Best Western Plus—not in Black River Falls, LaCrosse, Eau Claire or Winona, as their press release advertised.  *Id*.

Similarly disproven by the record is Defendants' other self-serving claim that they "did not make any misrepresentations with an intent to defraud" and that they "intentionally planted" "red flags" in the materials "Jerry Chubb" sent to the station.  *See* Defs. Mem. at 10-11. Notably, Defendants make these claims without a single citation to the record, and without having allowed Gray Television to depose them about either assertion.  *See* Fed. R. Civ. P. 56(c), (d).  The existing record, however, establishes that Defendants undertook lengthy, calculated and intentional measures to defraud Gray Television.  CSMF ¶¶ 55-71.  They purchased a domain with their show's purported name—<givethanksforstrengths>—and created an email address for "Jerry Chubb" from that domain.  CSMF ¶¶ 60-61.  They carefully crafted the emails and press

releases "Jerry Chubb" sent to the target stations to "tick all the boxes," as they admit, for local live features, including touting their local connections. CSMF ¶¶ 62-65. They methodically corresponded with each station that demonstrated interest in booking them, *see* CSMF ¶¶ 26, 62, 66, purchased costumes and props, *see* CSMF ¶ 58, designed the logos on the shirts and bandanas worn by "Chop & Steele," *see* CSMF ¶ 57, and wrote scripts for each appearance. CSMF ¶ 59. They purposefully chose stations near their live performances, *see* CSMF ¶ 56, then systematically used those appearances to generate interest in their live shows and drive customers to their website. *See* Resp. to Def. SMF ¶ 4; CSMF ¶¶ 28, 93-95.

At every step, Defendants acted with a clear and conscious understanding that their behavior was wrongful. They admit to canceling their last four appearances from the stress of "feel[ing] like [they] could get arrested afterwards." CSMF ¶ 71. In fact, the record establishes that they cancelled at least one appearance because they felt guilty after the station, clearly persuaded by Defendants' fraud as to their *bona fides*, went so far as to book an off-site location to better accommodate their purported wellness demonstrations. CSMF ¶ 69.

While Defendants argue that maintaining their characters throughout their appearance evidences lack of intent to defraud, to the contrary, this fact only reinforces the fraud. *See* Defs. Mem., at 11. Moreover, there was no time before the segment to prevent "Chop & Steele" from going on air. CSMF ¶ 83. Defendants did not provide the production personnel who filmed the "bump shots" with any information that would have allowed them, or Mr. Mickelson, to determine "Chop & Steele" were frauds prior to air time. CSMF ¶¶ 17-21, 81-82.

### 3. Gray Television Justifiably Relied On Defendants' Misrepresentations

Determining whether a party has justifiably relied on another's false representation is fact-intensive and therefore ordinarily a question of fact to be determined at trial. *Meisel v. Grunberg*, No. 07 CV 11610 BSJ, 2010 WL 4966443, at *3 (S.D.N.Y. Nov. 30, 2010). The

determination requires consideration of the "entire context of the transaction, including such aspects as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Universe Antiques, Inc. v. Vareika*, 510 Fed. Appx. 74, 76 (2d Cir. 2013).

The Defendants' motion relies on an inapplicable heightened standard of justifiable reliance referred to as the "sophisticated businessperson rule." *See Grumman Allied Indus. v. Rohr Indus.*, 748 F.2d 729, 737 (2d Cir. 1984) (holding that "[w]here sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access," reliance on the opposing party's representations will not be found justifiable); *see also Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, at 101 (2d Cir. 1997) (same). That rule is applied only in the most complex business disputes. The Second Circuit and district courts do not apply it across the board, as the Defendants purport, outside of that complex business transactional context. *See Universal Antiques*, 510 Fed. Appx. at 75-76 (affirming district court's conclusion not to apply the sophisticated businessperson rule where defendant fraudulently claimed to art buyer that a stained glass window was a Tiffany); *Twenty First Century L.P.*, 19 F. Supp. 2d 35, 40 (E.D.N.Y. 1998) (declining to apply sophisticated businessperson rule to claim based on fraudulent construction invoices where plaintiff "was not in the construction business" and thus had no reason to believe by the exercise of ordinary intelligence that the invoices were irregular).

Instead, under the appropriate standard, Gray Television is entitled to rely on Defendants' statements unless they are identifiable as false with only a "cursory glance." A plaintiff typically does not have a duty to investigate independently to determine the truth of the defendant's false representations; it is only where "the facts should be apparent to one of [the plaintiff's]

knowledge and intelligence from a cursory glance" that an investigation is required.  *Twenty First Century L.P. v. LaBianca*, 19 F. Supp. 2d 35, 40 (E.D.N.Y. 1998) (quoting *Field v. Mans*, 516 U.S. 59, 71-72 (1995)).

Here, the record shows that Gray Television's reliance on Defendants materials was justifiable.  CSMF ¶¶ 26, 66.  The topic of "Chop & Steele's" claimed tour and the anchors' communications with "Jerry Chubb," were all consistent with *Hello Wisconsin*'s prior practice and industry practice.  CSMF ¶¶ 7-23, 66, 72-76.

Defendants purposefully tailored the email from "Jerry Chubb" and the press release about "Chop & Steele" to deceive local broadcast stations.  CSMF ¶ 64.  Their purported purpose—promoting a free tour with local stops focused on wellness and anti-bullying—is consistent with other events and topics covered in *Hello Wisconsin*'s local live segments.  CSMF ¶¶ 10-12.  Indeed, Defendants went to great lengths to make their scheme believable, including registering the internet domain name "thanks4strengths.com," and creating email addresses for their fake agent—"Jerry Chubb"—with the suffix "@thanks4strengths.com."  CSMF ¶¶ 60-61. They tailored each email to include a false local connection, alternately claiming that "Steele" was from Michigan, Wisconsin, or Pennsylvania depending on the targeted station.  *See* Resp. to Def. SMF ¶ 4.  They did so knowing that each station would be enticed to broadcast a local feature about a native on tour promoting a positive message.  CSMF ¶ 64.

Gray Television justifiably relied on these materials, as evident from the fact that seven other stations also believed Defendants—and at least four others booked "Chop & Steele" to also appear on their morning shows. CSMF ¶ 66.  Defendants' communications with each of these stations mirrors their communications with Gray Television.  *Id*.  They further demonstrate that Gray Television's reliance on Defendants' calculated lies was justifiable.

10

###### 4.    Gray Television Suffered Damages That Can Be Proved At Trial As A Result of Defendants' Fraudulent Conduct

New York law allows recovery on a fraud claim for the "actual pecuniary loss sustained as a result of the wrong." *Healing Power, Inc. v. Ace Continental Exports, Ltd.*, No. 07CV4175NGGRLM, 2008 WL 4693246, at *4 (E.D.N.Y. Oct. 17, 2008).  If the plaintiff shows damages for fraud that are "direct, immediate, and [a] proximate result of the fraudulent misrepresentation," it is entitled to recovery. *Id.*[3]  Determining whether particular damages are direct enough to be recoverable is, like all other elements of a fraud claim, "fact-intensive." *Doehla v. Wathne Ltd., Inc.*, No. 98 CIV. 6087 (CSH), 2000 WL 987280, at *6 (S.D.N.Y. July 17, 2000).  Contrary to Defendants' claim, there is no *per se* rule that prevents a party from recovering damages for the loss of an economic opportunity lost as a result of the defendant's fraud.  *Compare* Defs. Mem., at 12 *with Doehla*, 2000 WL 987280, at *18 (stating that, if factually supported, "a defrauded plaintiff may base a claim for actual pecuniary loss upon an economic opportunity that defendant fraudulently induced him to forego").  The factual issue to be decided in each case, rather, is whether the lost opportunity flows directly from the fraud, or is instead too speculative or remote to justify recovery.  *Stewart v. Jackson & Nash*, 976 F.2d 86, 88 (2d Cir. 1992) (holding plaintiff could recover damages for lost environmental law "career development" opportunities where law firm fraudulently claimed she would get environmental law experience at the firm).

---

[3] The cases Defendants rely on are easily distinguishable.  In *Goldberg v. Mallinckrodt, Inc.*, 792 F.2d 305, 309 (2d Cir. 1986), the plaintiff sought damages for attorney's fees spent defending malpractice litigation, on the theory that defendant medical device manufacturer had made a fraudulent statement that caused the plaintiff to use the device, which then caused the plaintiff's patients to be injured, and which then caused the injured patients to sue plaintiff, and which then caused plaintiff to expend attorney's fees defending the cases.  In *AWH Investment Partnership v. Citigroup, Inc.*, 661 Fed. Appx. 2, 5-6 (2d Cir. 2016), the plaintiffs were stockholders who claimed that defendant's fraud caused them to hold onto their stock—which then dropped in price—and sought damages based on what they might have earned had they sold their stock at the right time under hypothetical market conditions.  By comparison, the damages Gray Television has incurred here are direct, clear, ascertainable, and recoverable.

Gray Television is entitled to recover the cost it expended to produce and broadcast the 6-minute segment in which "Chop & Steele" fraudulently appeared, which required preparation of the outdoor patio set, production staff support to prepare and produce the local live feature segment and talent time in preparing and presenting the segment. The cost of this to Gray Television was approximately $20. CSMF ¶¶ 111-113. *See Burnett v. Ford Motor Credit Co., LLC*, No. 09 CIV. 1738 HB FM, 2012 WL 897789 (S.D.N.Y. Mar. 16, 2012), *report and recommendation adopted sub nom. Burnett v. Federico*, No. 09 CIV. 1738 HB FM, 2012 WL 1450549 (S.D.N.Y. Apr. 23, 2012) (in fraud claim awarding compensatory damages in amount of $1 and punitive damages in amount of $5,000). Additionally, Gray Television is entitled to recover the cost of the air time that Defendants used and benefitted from. If Defendants had not fraudulently misappropriated Gray Television's resources and air time for their own benefit, Gray Television would have sold that air time for advertising and could have earned up to $1,800. CSMF ¶¶ 114-115. These damages are direct damages, as Gray Television necessarily gave up that opportunity in favor of the one that Defendants' fraudulently induced. *See Stewart*, 976 F.2d at 88 (allowing damages for lost career development opportunities that plaintiff could have taken if not induced by fraud to take another job); *Doehla*, 2000 U.S. Dist. LEXIS 9913, at *18 (holding defendant could recover for lost opportunities where he was fraudulently induced to quit his job to take employment with another company).

***

Given the extensive issues of material fact in dispute, as described above, Defendants' motion for partial summary judgment on Gray Television's fraud claim should be denied.

**C.    Defendants' Motion For Summary Judgment On Gray Television's Copyright Claim Should Be Denied**

In its Partial Motion for Summary Judgment, Defendants also make no effort to contest their facial violation of Gray Television's copyright to the November 29, 2016 *Hello Wisconsin* episode—nor could they.  Instead, they argue their infringement is excused as "fair use."

As the Second Circuit has explained, "the law has long recognized that 'some opportunity for fair use of copyrighted materials' is necessary to promote progress in science and art" particularly when the purposes of the use at issue is one of "criticism, comment, news reporting, teaching . . . scholarship, or research."  *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994); 17 U.S.C. § 701).  Application of this defense requires that courts "undertake a case-by-case analysis" and is an "open-ended and context-sensitive inquiry."  *U.S. v. American Soc. of Composers, Authors and Publishers*, 599 F. Supp. 2d 415, 423 (S.D.N.Y. 2009); *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006).  Critically, "[s]ince fair use is an affirmative defense to a claim of infringement, the burden of proof is on its proponent."  *Infinity Broad. Corp. v. Kirkwood*, 150 F. 3d 104, 107 (2d Cir. 1998).  Here, Defendants have failed to meet their burden.

"Four nonexclusive factors" are properly considered by the court when evaluating a fair use defense:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

*TCA Television Corp.*, 839 F.3d at 178 (quoting 17 U.S.C. § 107).  Courts evaluate these factors individually and collectively, "with their results 'weighed together, in light of the purposes of copyright.'"  *Id*. at 179 (quoting *Campbell*, 510 U.S. at 578).  Courts also consider additional factors, such as a defendant's bad faith in connection with its use of someone else's work.  *See, e.g., Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir. 1989) (fair use "[a]nalysis begins not by elevating the statutory guides into inflexible rules, but with a review of the underlying equities," including the notion that "to make use of another's copyright material fairly presupposes that the actor acted fairly and in good faith.").

Here, the record reflects material questions of fact precluding summary judgment as to each of these factors.  Defendants' motion for partial summary judgment should, therefore, be denied.

### 1.    Material Questions Of Fact Concerning The Purpose And Character Of Found Footage Festivals Use Of Gray Television's Footage Preclude A Finding Of "Fair Use"

Defendants cannot meet their burden on summary judgment as to the first factor, which assesses the purpose and character of the use, and considers whether Defendants' use is transformative, whether Defendants' use was for a commercial purpose and whether Defendants acted in good faith.  17 U.S.C. § 107; *Blanch*, 467 F.3d at 251.  Genuine issues of material fact exist with respect to each of these subfactors.

### a.    Found Footage Festival's Use Was Not Transformative

The Second Circuit has reviewed and rejected Defendants' theory, here, that simply including Gray Television's video, unchanged in any way, in a "humorous" "montage" is transformative.  *See* Defs. Mem., at 16.[4]

---

[4] Defendants do not seriously argue that their copyright piracy here constitutes a "parody."  As explained by the case they cite, "[a] parody is characterized by an attempt to mimic an original, expressive, and usually famous work."

In *TCA Television Corp.*, the Second Circuit considered a fair use defense based on a theatrical play featuring a scene that reenacted a famous comedy routine without any changes. 839 F.3d at 182.  The court rejected a claim of fair use, explaining that while "[t]he Play may convey a dark critique of society . . . it does not transform Abbot and Costello's Routine so that *it* conveys that message."  *Id.* (emphasis in original).  Moreover, "[t]he fact that . . . the Routine is quite funny, also cannot justify its use in the Play.  That humor is an achievement of the Routine's creators, not of the playwright who takes advantage of it without transforming the Routine's aesthetic."  *Id.* at 182.

Here, the Gray Television footage exploited in Found Footage Festival's videos and in the live show is nothing more than significant, unchanged, portions of footage from "Chop & Steele's" appearance on *Hello Wisconsin*.  The clips simply stand on their own, conveying precisely what the copyrighted work itself conveyed in the original broadcast.  The fact that the video contains footage from three appearances in "montage" form does not, by itself, magically make the use transformative.  *See Bouchat v. Baltimore Ravens Ltd. Partnership,* 619 F.3d 301, 309 (4th Cir. 2010) (rejecting claim that use of the copyrighted work unchanged in a highlight film was transformative); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1175 (9th Cir. 2012) (photo montage of couple's wedding "at best minimally transformative" where "inherent character of the images" were unchanged and principally consisted of "wholesale copying sprinkled with written commentary."); *Elvis Presley Enterprises, Inc v. Passport Video*, 349 F.3d 622, 629 (9th Cir. 2003) (use of copyrighted clips of Elvis's television appearances was not

---

*Kane*, 2003 WL 22383387 at *4.  As that court observed, "[U]nlike a parody, the use of plaintiff's clip in this case did not involve an altered imitation of a famous work, but the presentation of an obscure, original work in a mocking context."  *Id.*  Nothing about the works at issue here meets the definition of a parody, and Defendants offer no authority, because there is none, for the contention that "participatory creation of the raw material for a parodic montage" meets that definition either.  If anything, Defendants were parodying "strongmen" and fitness gurus, not *Hello Wisconsin*.

transformative when the clips were "played without much interruption, if any, . . . [and] serve[d] the same intrinsic entertainment value that is protected by Plaintiffs' copyrights"); *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 938 (9th Cir. 2002) ("Merely plucking the most visually arresting excerpt from LANSS's nine minutes of footage cannot be said to have added anything new."). The fact that Defendants appeared in the footage also does not make it transformative. *See 16 Casa Duce, LLC v. Merkin*, 791 F.3d 247, 258 (2d Cir. 2015) ("If copyright subsisted separately in each of their contributions to the completed film, the copyright in the film itself, which is recognized by statute as a work of authorship, could be undermined by any number of individual claims.").

Defendants' reliance on *Blanch v. Koons* to manufacture a transformative meaning is unavailing. *See* Defs.' Mem., at 15. Indeed, *Koons* demonstrates why Defendants' arguments fall short. In *Koons*, the Second Circuit considered an artist's use of a photograph in a large artwork that originally appeared in a glossy fashion magazine. In addition to making significant changes to the photograph itself by altering its colors, background, medium, size, and orientation, the *purpose* behind the two works was undeniably, and obviously, different, justifying a finding of transformative use. *Koons*, 467 F.3d at 253 (comparing deposition testimony of original photographer stating purpose was to evoke an "erotic sense" with that of artist stating purpose was to comment on "social and aesthetic consequences of mass media."). Here, by contrast, Defendants simply string together clips of segments that depict exactly the same images as the original broadcast: both present viewers with a "strongman duo." That the duo performed particularly bumbling shtick does nothing to alter this purpose. As the *Blanch* court warned, "We have declined to find a transformative use when the defendant has done no more than find a new way to exploit the creative virtues of the original work." *Id.* at 252; *see*

*also LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 448 (S.D.N.Y. 2011) ("Commenting on and criticizing Rihanna's treatment by the media…does not require copying [photographs]. Thus, defendants' fair use defense is unavailing."); *XPays, Inc. v. Internet Commerce Drp.*, 2008 WL 11336139, at *9 (C.D. Cal. Jan. 10, 2008) (transformative use of short clips, even accompanied by some commentary, is a question for the jury).

Defendants' citation to *Kane v. Comedy Partners* fares no better. 2003 WL 22383387, at *4 (S.D.N.Y. Oct. 16, 2003). There, the court considered a comedic news program's use of a two-second clip of a copyrighted television show. In that case, the defendants introduced the clip as part of a segment called "Public Excess" that specifically commented on the clip itself, and placed it in critical context. *Id*. By contrast, in Found Footage Festival's videos, DVDs and live shows, they simply stitched Defendants' television appearances together and use the footage to emphasize the inherent (and intentional) humor of their shtick, not to comment on local news formats, or anything else, more generally.

Moreover, as the *Koons* case demonstrates, discovery is critical to informing a court's understanding of transformative purpose because it reveals the defendants' actual intentions. Here, in moving for summary judgment prior to the close of discovery, Defendants seek to avoid being deposed about their true intentions. The only evidence they have provided is their attorney's representation that their goal was to "critically examin[e] the quality of Plaintiff's television show." Defs.' Mem. at 16. No evidence supports this representation, and Defendants cite to none. Indeed, this representation is belied by the footage itself, which contains no substantive commentary whatsoever: the tape of the single live show suggests that the Chop & Steele performances were "to try to get the word out about the show," and Defendants' press interviews suggest that the performances were the product entirely of boredom and lacked a "big

point." CSMF ¶ 71. These discrepancies create issues of material fact and are sufficient to preclude a finding of summary judgment. *See, e.g., Hirsch*, 2017 WL 3393845, at *7 (concluding on motion to dismiss that "discovery of the Episode's overall context and content" was necessary to assess transformative use); *Davis v. Walt Disney Co.*, 2004 WL 1895234, at *5 (D. Minn. Aug. 23, 2004) ("without knowing the creator's intent in [copying Plaintiff's copyrighted material], the Court simply cannot assess the Defendants' fair use defense.").

### b.     Found Footage Festival's Use Was Commercial

Additionally, Defendants' unauthorized use of Gray Television's video for advertising, in their DVDs, and in their live shows was also plainly commercial, a fact that weighs against a finding of fair use. CSMF ¶¶ 24-25, 93-97;*Campbell*, 510 U.S. at 585 ("The use . . . of a copyrighted work to advertise a product, even in a parody, will be entitled to less indulgence under the first factor of the fair use enquiry."); *TCA Television Corp.*, 839 F.3d at 183-84 ("This conclusion applies with particular force here where plaintiffs allege that defendants not only used an unaltered and appreciable excerpt of the Routine in a commercial play but also featured the Routine in the Play's advertising, conduct which reasonably qualifies as commercial exploitation weighing strongly against fair use"); *American Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 922 (2d Cir. 1994) (stating that fair use claim will not be sustained when secondary use can fairly be characterized as "commercial exploitation" (internal quotation marks omitted)); *Consumers Union of U.S., Inc. v. Gen. Signal Corp.*, 724 F.2d 1044, 1049 (2d Cir. 1983) (observing that some infringement actions involve copying of creative expression for "purpose of having that precise form of expression advance someone else's commercial interests—for example, using well-known copyrighted lines to attract attention to an advertisement").

### c.     Found Footage Festival Acted In Bad Faith

Defendants' bad faith conduct also militates strongly against a finding in favor of Defendants under the first fair use factor.  "Fair use presupposes good faith and fair dealing." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985); *see also Robinson v. Random House, Inc.*, 877 F. Supp. 830, 841 (S.D.N.Y. 1995), *modified on other grounds*, 1995 WL 502525 (S.D.N.Y. Mar. 26, 1995).  As the Second Circuit has observed, the Supreme Court "directs courts to consider a defendant's bad faith in applying the first statutory factor."  *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 478 (2d Cir. 2004) (citing *Harper & Row*, 471 U.S. at 562-63).  "'[A] breach of confidence or deception' in acquiring the underlying work should weigh against a finding of fair use."  *Peteski Prods., Inc. v. Rothman*, 2017 WL 3731000, at *4 (E.D. Tex. Aug. 20, 2017) (quoting *American Institute of Physics v. Winstead PC*, 2013 WL 6242843, at *12 (N.D. Tex. Dec. 3, 2013) (allegations that a defendant had copied copyrighted material in order to aid her own litigation, and in violation of various employment and confidentiality agreements, weighed against a finding of fair use under the first factor) (collecting cases)); *Rogers v. Koons*, 960 F.2d 301, 309 (2d Cir. 1992) (tearing copyright mark off work "suggests bad faith in defendant's use of plaintiff's work, and militates against a finding of fair use.").

Here, not only did Defendants engage in bad faith conduct when they fraudulently appeared on *Hello Wisconsin*, they also admit they never had any intention of licensing the footage from Gray Television.  CSMF ¶ 92.  Instead, they colluded with acquaintances to record the *Hello Wisconsin* episode they appeared in for their subsequent exploitation, and have then refused to identify those individuals in discovery.  CSMF ¶¶ 92. 124-125.    Under these circumstances, Defendants cannot prevail in summary judgment on their fair use claim.  *See Shady Records, Inc. v. Source Enterprises, Inc.*, 2005 WL 14920, at *18 (S.D.N.Y. Jan. 3, 2005)

(stating that because "as a matter of fact, whether the Source Parties acted in bad faith presents sharply disputed factual issues" and "the Court cannot conclude as a matter of law that the Source Parties acted in bad faith, such that it can properly weigh the 'character of the use' on summary judgment in favor of either party."); *Sarl Louis Feraud Int'l v. Viewfinder Inc.*, 627 F. Supp. 2d 123, 131 (S.D.N.Y. 2008) (noting dispute over bad faith issue and stating, "Whether these explanations are credible is not to be decided at this stage of the litigation; on summary judgment, a court must construe the facts in the light most favorable to the nonmoving party. Thus, whether defendant acted in bad faith presents issues of fact for resolution at trial.").

***

These factual issues prevent the entry of summary judgment in Defendants' favor on the first fair use factor—the purpose and character of the use.

### 2.     The Nature Of The Copyrighted Work Precludes A Finding Of "Fair Use"

The second fair use factor examines "the nature of the copyrighted work," and evaluates "(1) whether the work is expressive or creative, with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerable narrower." *Cariou v. Prince*, 714 F.3d 694, 709-10 (2d Cir. 2013).  It "is rarely found to be determinative." *Hirsch*, 2017 WL 3393845 at *6.

Defendants' characterize *Hello Wisconsin* as a "morning news show," but they make no attempt to explain how that in and of itself would lead to finding in their favor on this factor.  It doesn't.  The local live segments of *Hello Wisconsin* involve planning and creativity for WEAU staff to execute.  CSMF ¶¶ 6, 16-22; *see, e.g. Kane*, 2003 WL 22383387, at *5 (stating of comedy show commenting on news events that "the creative nature of plaintiff's television show

places the show in the 'core of intended copyright protection'") (quoting *Campbell*, 510 U.S. at

586).  This element, thus, weighs against Defendants on summary judgment.

> ### 3.  Material Questions Of Fact Concerning The Amount And Substantiality Of Gray Television's Footage Used Preclude A Finding Of "Fair Use"

The third fair use factor, which examines whether "'the amount and substantiality of the

portion used in relation to the copyrighted work as a whole' … are reasonable in relation to the

purpose of the copying," also militates toward the denial of Defendants' motion.  *Campbell*, 510

U.S. at 586 (quoting 17 U.S.C. § 107(3)).  Defendants erroneously focus exclusively on the

*quantity* of footage used.  The Second Circuit has rejected that approach and has been clear the

analysis, instead, should focus on the "*quality and importance*" of the materials used.  *TCA

Television Corp.*, 839 F.3d at 185 (quoting *Campbell*, 510 U.S. at 587); *see also American

Society of Composers, Authors and Publishers*, 599 F. Supp. 2d at 430 (copying mere 10 to 30

second clips of copyrighted songs was enough to weigh the third factor in favor of plaintiffs);

*Harper & Row*, 471 U.S. at 564-66 (copying of 300 words out of book weighed against infringer

where excerpted portion was "the heart of the book."); *Iowa State Univ. Research Found., Inc. v.

Am. Broad. Cos.*, 621 F.2d 57, 61-62 (2d Cir. 1980) (copying two-and-one-half-minute segment

of 28-minute copyrighted film, amounting to 8% of the film, was not fair use, and noting that

"[o]bviously [the defendant] found this footage essential, or at least of some importance.").

The Court should evaluate the amount and substantiality of the materials used in light of

the transformative nature of that use.  *Campbell*, 510 U.S. at 583 n.6.  In *XPays*, for example, the

court considered the use of three 59-second clips of a sixty-two minute video, which plaintiffs

alleged comprised the most popular and marketable clips available.  2008 WL 11336139 at *10.

The court held that "A reasonable factfinder may determine that SK's use was quantitatively and

qualitatively extensive relative to the review's potentially minimal transformative use.  A less

substantial use of clips may have been sufficient to provide context for the review. Alternatively, a reasonable factfinder could reach the opposite conclusion, that SK's use of the Video did not appropriate the 'heart' of the Video and was limited to the amount necessary for its review."[5]

Similarly here, a reasonable factfinder could easily determine that the "Chop & Steele" segments formed the "heart" of the broadcast, the most "popular and marketable clips." Indeed, Defendants readily promote the fact that the clips comprise "the best of" "Chop & Steele." *See* Defs. Ex. A at 1:14:25.

### 4. Material Questions Of Fact Concerning The Effect Of The Use Upon The Potential Market Preclude A Finding Of "Fair Use"

Defendants fare no better under the fourth fair use factor, which evaluates "'the effect of the use upon the potential market for or value of the copyrighted work,' focusing on whether the secondary use usurps demand for the protected work by serving as a market substitute." *TCA Television Corp.*, 839 F.3d at 186. As with other factors, the Court should evaluate the fourth factor in light of the work's transformative use (or, as here, lack thereof). *On Davis v. The Gap*, 246 F.3d 152, 176 (2d Cir. 2001) ("In this case, as noted, the Gap's use is not transformative. It supersedes. By taking for free Davis's design for its ad, the Gap avoided paying 'the customary

---

[5] The cases Defendants rely on are consistent with this analysis. In *Swatch*, the court found that the third factor was *neutral* where a news agency published the entirety of a voice recording in accordance with the "unusual circumstances" of highly important work of news reporting that was clearly in the public interest. *Swatch Grp. Management Services, Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 85 (2d Cir. 2014). No such public interest in sharing the antics of a fake strongman duo exists here. In *Kane*, the court found reasonable the use of a two-second clip (out of a 29-minute-long video) where the professed qualitatively important aspect of the video was "inaudib[le]" and where its use was significantly transformative. 2003 WL 22383387 at *6. Here, by contrast, Defendants extract the most marketable clips from a significant portion of an entire segment, played without alteration as to its content. Finally, in *Blanch*, the court concluded that the amount of a copyrighted photograph used in an artwork was reasonable in relation to the purpose of the copying. 467 F.3d at 257. The court specifically evaluated the artist's stated "purpose" ("to convey the 'fact' of the photograph to viewers of the painting" and comment on the "aesthetic consequences of mass media") in light of his minimal use (excluding the aspects of the copyrighted photograph most reflective of the original photographer's creative decisions, like the setting and placement of the subjects). *Id.* at 258. No such care or calibration is evident in the Found Footage Festival video uses.

price' Davis was entitled to charge for use of his design.") (quoting *Harper & Row*, 471 U.S. at 562).

Defendants here offer no record facts in support of their assertion of the absence of market harm. Defs.' Br. at 19. Gray Television has an active market in licensing short segments of its broadcasts, which can easily demonstrate the harm. *See* CSMF ¶¶ 107-110. Gray Television regularly charges outside companies for the licensure of broadcast segments for use in other programs. *Id.* This alone is enough to tilt the fourth factor in its favor. *See, e.g., Am. Soc. of Composers, Authors & Publishers*, 599 F. Supp. 2d at 433 (evidence showing other entities paid for the right to deliver short segments of music to customers established that there was a market that was adversely impacted by the free use of the works); *Video-Cinema Films, Inc. v. Lloyd E. Rigler-Lawrence E. Deutsch Found.*, 2005 WL 2875327, at *8 (S.D.N.Y. Nov. 2, 2005) (finding fourth factor favored a finding of no fair use where "Video-Cinema has submitted a number of licenses with third parties for performance excerpts from Carnegie Hall. These licenses demonstrate that there is a commercial market for performance excerpts from Carnegie Hall in addition to a licensing market for broadcasts of the whole movie."); *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 81 (2d Cir. 1997) ("Ringgold's affidavit clearly raises a triable issue of fact concerning a market for licensing her work as set decoration. She is not alleging simply loss of revenue she would have earned from a compensated copying; she is alleging an 'exploitation of the copyrighted material without paying the customary price.'") (quoting *Harper & Row*, 471 U.S. at 562).

For these reasons, Defendants' Motion for Partial Summary Judgment of Gray Television's copyright infringement claim should be denied.

## IV.   ALTERNATIVELY, PURSUANT TO FED. R. CIV. P. 56(d), THE COURT SHOULD CONTINUE DEFENDANTS' SUMMARY JUDGMENT MOTION IN ORDER TO ALLOW ADEQUATE TIME FOR DISCOVERY

Fed. R. Civ. P 56(d) provides that "when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (internal quotations omitted). "This is especially true where a party has not had an opportunity to conduct full discovery." *Walden v. Sanitation Salvage Corp.*, 2015 WL 143353, *2 (S.D.N.Y. Mar. 30, 2015). Indeed, "[o]nly in the 'rarest of cases,' therefore, may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Id.*, at *3 (quoting *Miller*, 321 F.3d at 303-04).

Gray Television firmly has demonstrated that the Court should deny Defendant's motion. Alternatively, however, it asks the Court to adjourn Defendants' motion until after discovery closes in this case. *See Carpenter v. Churchville Greene Homeowner's Association, Inc.*, 2011 WL 710204, at *5 (W.D.N.Y. Feb. 22, 2011) (granting Rule 56(d) motion to conduct additional discovery, including depositions of defendants). The depositions of all three Defendants are currently scheduled to be held on October 23 and 24. CSMF ¶ 121. The deposition of Found Footage Festival's business manager is scheduled for October 25. CSMF ¶ 122. Gray Television also has pending before Magistrate Judge Gold a letter motion to compel asking Defendants to identify several relevant witnesses they have thus far refused to name, which is scheduled to be heard on October 23. CSMF ¶¶ 123-125.

Gray Television expects that this additional discovery will yield significant information relevant to Defendants' purpose and motive in creating the infringing works, as well as the context of the works themselves—all significant issues to Defendants' fair use defense. CSMF

¶¶ 126-128, 130-131.  Similarly, with respect to Gray Television's fraud claim, the additional discovery will yield information relevant to Defendants' intention.  CSMF ¶ 129.  To date, Defendants have offered only conclusory, self-serving assertions, unsupported by the record concerning these important issues. CSMF ¶ 129.

For these reasons, if the Court declines to outright deny Defendants' motion, it should allow Gray Television to complete discovery and supplement the record.  *See*  CSMF ¶¶ 130-131.

## V.   CONCLUSION

For the foregoing reasons, the motion for partial summary judgment filed by Defendants Found Footage Festival, LLC, Nick Prueher and Joe Pickett should be denied, or in the alternative, the Court should adjourn consideration Defendants' motion until after discovery closes in this case.

Dated:  October 17, 2017                     Respectfully submitted,

                                             BALLARD SPAHR LLP


                                             /s/ Charles D. Tobin
                                             Charles D. Tobin
                                             Adrianna C. Rodriguez (*admitted pro hac vice*)
                                             1909 K St., N.W., 12th Floor
                                             Washington, D.C. 20006
                                             Telephone: (202) 661-2200
                                             Facsimile: (202) 661-2299
                                             TobinC@ballardspahr.com
                                             RodriguezAC@ballardspahr.com
                                             *Attorneys for Plaintiff*
                                             *Gray Television Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 17, 2017, I caused to be served copies of the foregoing upon Defendants' counsel of record Anderson J. Duff by USPS and electronic mail.

/s/ Charles D. Tobin

26