UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRAY TELEVISION GROUP, INC.,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　- against -<br><br>FOUND FOOTAGE FESTIVAL, LLC, NICK PRUEHER, and JOE PICKETT,<br><br>　　　　　　　　　　Defendants. | Case No. 17-cv-02232-MKB-SMG |

**DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM OPPOSING
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGEMENT**

## ARGUMENT

I. **Even Under the Standard for Reasonable Reliance Articulated by the Cases Plaintiff Cites, Plaintiff Cannot Meet this Element of Fraud**

It is cannot be disputed that Plaintiff Gray Television is a sophisticated media company and that the employees who communicated with Defendants prior to their meeting and during their meeting are persons working for *Hello Wisconsin*, a "morning news and talk program. (Pls.' Counterstatement of Material Facts Ex. A, ECF No. 32-3.) Although Defendants maintain that the standard for reasonable reliance articulated by Plaintiff is inapplicable in this case, even using the standards articulated in the precedent cited by Plaintiff, Plaintiff cannot show "justifiable reliance" on any alleged material misrepresentation. Moreover, based on the record before the Court, it cannot be disputed that Plaintiff's employees knew that the characters Chop and Steele were ridiculous when they arrived at *WEAU*.

Plaintiff asserts that "it is only where 'the facts should be apparent to one of [the plaintiff's] knowledge and intelligence from a cursory glance' than an investigation is required." *Twenty First Century L.P. v. LaBianca*, 19 F. Supp. 2d 35, 40 (E.D.N.Y. 1998) (quoting *Field v. Mans*, 516 U.S. 59, 71-72 (1995)). Justice Souter, delivering the opinion of the court in *Field*, favorably cited to the Restatement (Second) of Torts (1976) writing "[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Id.* at 71 (citation omitted). In illustrating this point, Justice Souter again cited the Restatement (Second) of Torts writing "[t]hus a defect that any experienced horsemen would at once recognize at first glance may not be patent to a person who has no experience with horses." *Id.* (citation omitted).

In *Twenty First Century*, the "plaintiff was not in the construction business." 19 F. Supp. 2d at 40. The misrepresentations in that case were directly related to the construction industry.

1

*Id.* at 39-40. Plaintiff and its employees are not like the plaintiff in *Twenty First Century*, they are the proverbial "experienced horsemen" described in the Restatement (Second) of Torts and cited favorably by Justice Souter for the in *Field*. According to Plaintiff, this is not the first time its stations have failed to conduct basic due diligence after receiving press releases containing outlandish claims that were easily verifiable. Plaintiff's employees have the "qualities and characteristics" that, even using the standard from cases cited by Plaintiff, would require more than blind reliance on a clearly ridiculous press release. It is undisputed that, on the morning they appeared on *Hello Wisconsin*, Pickett and Prueher were turned away by a similar morning news show at *WQOW*. (Pls.' Counterstatement of Material Facts Ex. A 16 ¶ 70, ECF No. 32-3.)

Plaintiff's contention that "[t]he anchors cannot see the 'bump shot' that is in the background and do not review it prior to airing" is also contradicted by anchor Tyler Mickelson's laughter in reaction to the ridiculous characters Chop and Steele during both of the bump shots shown in the video produced by Defendants during discovery and attached to their memorandum in support of their motion for partial summary judgment. (Defs.' Mem. Supp. Mot. Summ. J. Ex E, ECF No. 31-5.)

Plaintiff's admitted status as a news and talk program does not allow blind reliance on a ridiculous and provably false press release. Plaintiff's employees' interactions with the characters Chop and Steele prior to their appearance on *Hello Wisconsin* further demonstrate that it cannot meet the reliance element of fraud required by courts in New York.

II.     **Plaintiff Cannot Prove Copyright Infringement**

Even taking the few additional seconds of footage as calculated by Plaintiff into account in its disputed facts, Plaintiff cannot show copyright infringement. Plaintiff disputes Defendants' contention that *Hello Wisconsin* is a two-hour long program by stating that it is a two-and-a-half-hour long program. Plaintiff's factual assertion strengthens Defendants' argument. The addition

of a few seconds to the footage used by Defendants is negligible when compared to Plaintiff's addition of thirty minutes to the underlying work that Defendants' allegedly infringed.

Plaintiff also inaccurately summarizes Defendants' theory in its reliance on *TCA Television Corporation v. McCollum*, 839 F.3d 168 (2d Cir. 2016). In *TCA Television Corp.*, the Second Circuit noted that the humor in the second work was "an achievement of the [author of the underlying work] not of the playwright who takes advantage of it without transforming the [underlying work's] aesthetic." *Id.* at 182. Here, the humor of the Defendants' works at issue is not derived from Plaintiff. Although it, in part, derives from Pickett and Prueher's participatory creation of the underlying work, the real humor is the context in which Defendants place snippets of the underlying work to comment on morning news television programming. Had they not been interviewed by a news anchor on live television, their characters would not be nearly as humorous. The context is transformative because the humor of the Defendants' works at issue arises from the context in which Defendants placed the footage from a morning news show. The contextualization of less than two minutes of a two and a half hour show also provide a serious commentary on both the ease with which the characters Chop and Steele were able to appear on a morning news program and the nature of the characters that sometimes appear on morning news programs.

Moreover, Plaintiff has not reasonably shown that the less than two minutes of footage from its daily two-and-a-half-hour show formed the heart of its program. In *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 544-45, 564-66 (1985), the Supreme Court did find that approximately 300 words from a 2,250-word piece were the heart of the underlying work, but because those 300, unpublished, words discussed why President Ford pardoned President Nixon. The facts before the Court are radically different. If the minimal footage of the

3

characters Chop and Steele is popular and marketable, it is a direct result of its humorous commentary on morning news television programs like *Hello Wisconsin*.

## CONCLUSION

For the foregoing reasons and those stated in Defendants' memorandum in support of the subject motion for partial summary judgment, Defendants respectfully request that their motion for partial summary judgment be granted.

Dated: October 24, 2017
New York, New York

                                            THE LAW OFFICES OF
                                            ANDERSON J. DUFF, PLLC
                                            *Attorneys for Defendants*

By:   /s/ Anderson J. Duff
       Anderson J. Duff
       244 5th Avenue, Suite 2230
       New York, New York 10001
       (t) 212.996.4103
       (f) 212.996.5863
       anderson@revisionlegal.com